IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARY ZULAUF,

        Plaintiff,

v.                                  CIVIL ACTION NO. 3:20-0607

MARSHALL UNIVERSITY
BOARD OF GOVERNORS,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss by Defendant Marshall University Board of Governors. ECF No. 6. For the following reasons, the Court **DENIES** the motion.

On September 15, 2020, Plaintiff Mary Zulauf filed this action against Defendant under 20 U.S.C. § 1681 ("Title IX"). In her Complaint, Plaintiff states that she was enrolled as a student at Marshall University and is a former member of the University's cross-country team. Plaintiff alleges that, while she was a student and member of the women's team, she was sexually assaulted in September of 2018 by Coy Smith, who was a member of the men's team. Plaintiff asserts she told her coaches of the assault and filed an official complaint with the University. Approximately two weeks later, Plaintiff states she was contacted by the University's Title IX Coordinator, Debra Hart. Three days later, Ms. Hart and Nick Wright, Marshall's Title IX investigator, met and interviewed Plaintiff. Plaintiff claims that Ms. Hart suggested, and Plaintiff agreed, that a No Contact Order ("NCO") be implemented to prevent Mr. Smith from contacting her. Plaintiff claims, however, that as of October 1, 2018, an NCO had not been issued. Therefore,

she emailed Ms. Hart for an update. The following day, a Notice of Investigation was issued, but an NCO was not issued.

Plaintiff emailed and requested an update from Ms. Hart again on October 10, 2018. Ms. Hart replied that there was a delay in issuing the NCO because the University's Athletic Department had intervened. Plaintiff emailed Ms. Hart a third time on October 17, 2018, requesting an update. At that point, Plaintiff told Ms. Hart she was considering dropping out of school because she was distressed over her continued contact with Mr. Smith. The NCO was issued that day.

Soon thereafter, Plaintiff states the women's and men's cross-country teams were at an out-of-state competition. Plaintiff claims that, despite the NCO, the coaches assigned Mr. Smith the hotel room directly across from her room. Shortly after returning from the competition, Plaintiff states she was hospitalized in a psychiatric ward related to the assault and subsequent events.

At some point, a first draft of a report of the investigation (the "first draft") was issued by the University. According to Plaintiff, the first draft found Mr. Smith was responsible for the assault. Plaintiff states the first draft was sent to her on December 20, 2018. Nevertheless, following the Christmas break, Plaintiff claims that Mr. Smith was in her Chemistry class in violation of the NCO. Plaintiff asserts she emailed Ms. Hart about the situation on January 10, 2019, but she received no response.

On February 4, 2019, Claire Snyder, the Program Coordinator at the Women's Center at Marshall, emailed Coach Caleb Bowen on behalf of Plaintiff asking why Mr. Smith continued to practice with Plaintiff, and Ms. Snyder requested an accommodation. Ms. Snyder received no response. However, the following day, Plaintiff was dismissed from the women's team. Thereafter, a final report was issued by the University on February 21, 2019, finding Mr. Smith was not responsible for sexual assault or any other misconduct.

Defendant now moves to dismiss Plaintiff's Complaint on two grounds. First, Defendant argues Plaintiff's claims are barred by the statute of limitations. Second, Defendant asserts Plaintiff has failed to state a claim upon which relief may be granted. Upon review, the Court finds both arguments without merit.

Title IX provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a), in part. In this case, the parties agree that a Title IX claim in West Virginia is subject to a two-year statute of limitations pursuant to West Virginia Code § 55-2-12. *See Farley v. New River Cmty.*, 5:16-CV-9442, 2017 WL 440732, at *3 (S.D. W. Va. Feb. 1, 2017) (recognizing that, "pursuant to W. Va. Code § 55-2-12, the statute of limitations for Title IX claims is two years"); *see also Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007) (stating "because Title IX does not contain an express statute of limitations, 'every circuit to consider the issue has held that Title IX also borrows the relevant state's statute of limitations for personal injury'" (citations omitted)). Additionally, Defendant argues that, because it is a State

entity, a plaintiff must give thirty (30) days notice to its chief officer and West Virginia's attorney general before filing an action. W. Va. Code § 55-17-3(a)(1).[1] To prevent shortening the statute of limitations to comply with the pre-suit notice requirement, the statute of limitations is tolled for thirty days from the date of notice in subsection (a)(1) or the date of the returned receipt. W. Va. Code § 55-17-3(a)(2).[2] Although state law determines the length of the statute of limitations, federal law determines when the claim accrues. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (providing "[t]he applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination" (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir.1975)). For a civil rights claim, the action "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id*. (internal quotation marks and citation omitted).

While not set forth in the Complaint, Defendant asserts Plaintiff's sexual assault occurred on September 2, 2018, and she reported it to the University on September 4, 2018.

---

[1]Defendant's chief officer then must give a copy of the written notice to the President of the Senate and the Speaker of the House of Delegates. *Id*.

[2]Subsection (a)(2) provides:

> The written notice to the chief officer of the government agency and the Attorney General required by subdivision (1) of this subsection is considered to be provided on the date of mailing of the notice by certified mail, return receipt requested. If the written notice is provided to the chief officer of the government agency as required by subdivision (1) of this subsection, any applicable statute of limitations is tolled for thirty days from the date the notice is provided and, if received by the government agency as evidenced by the return receipt of the certified mail, for thirty days from the date of the returned receipt.

W. Va. Code § 55-17-3(a)(2).

Defendant further claims Plaintiff submitted her notice of claim on August 4, 2020. Therefore, Defendant contends she was required to file her Complaint by September 4, 2020. As Plaintiff did not file this action until September 15, 2020, Defendant argues the Complaint is untimely. The Court disagrees.

In support of its position, Defendant cites *Samuelson v. Oregon State University*, 162 F. Supp.3d 1123 (2016), for the proposition that the statute of limitations begins to run on the date an incident is reported to a University. However, the Court finds *Samuelson* is clearly distinguishable from this case. In *Samuelson*, the district court held the statute of limitations began to run on the day the plaintiff reported she was raped to the University because she knew at that moment of the University's "hostile response." 162 F. Supp.3d at 1126, 1134-35 When she reported the event, the University's sexual assault counselor said "(a) maybe Plaintiff had said 'yes', (b) a rape kit was worse than the assault itself, (c) 'these things are hard to prove', (d) it would be blamed on Plaintiff, [and] (e) Plaintiff should not have been drinking [and the assault counselor] gave her meeting times for Alcoholics Anonymous[.]" 162 F. Supp.3d at 1126. Under those circumstances, the district court's decision that the statute of limitations began to run on the date the plaintiff reported the incident is well founded because that is when the plaintiff knew or should have known of her claim for deliberate indifference. However, such holding cannot be generalized to the alleged facts of this case.

Here, Plaintiff makes no allegation that leads this Court to a conclusion that she either knew or should have known the University would act with deliberate indifference to her claim when she filed her report. Instead, Plaintiff was contacted by Ms. Hart approximately two

weeks later and, just three days thereafter, Plaintiff was interviewed by Ms. Hart and an investigator. According to Plaintiff, it was agreed at that meeting that the NCO would be issued. There are no allegations by Plaintiff that, when she made her report or spoke with Ms. Hart and the investigator, they were hostile toward her or accused her of wrongdoing, as occurred in *Samuelson*. In fact, they agreed to an NCO.

Accepting for purposes of this motion Defendant's timeline that Plaintiff filed her report on September 4[3] and Plaintiff's statement that she was contacted two weeks later and was interviewed three days after being contacted, the interview would have taken place on or about September 21. Although there was a short delay between the time Plaintiff reported the event and the time she was interviewed, the Court finds insufficient evidence based on the pleadings that Plaintiff either knew or should have known she had a claim for deliberate indifference by that time. Therefore, as Plaintiff filed this action on September 15, 2020 and knowledge of deliberate indifference cannot be imputed to her until sometime after September 21, 2018, the Complaint necessarily was filed within the statute of limitations. Thus, the Court **FINDS** Plaintiff's Complaint is not untimely and **DENIES** Defendant's argument.[4]

---

[3]Plaintiff does not contest that she reported the assault to the University on September 4, 2018. Although these facts are outside the pleadings, even if the Court considers them for purposes of this motion, the Court finds they are insufficient to warrant dismissal.

[4]In its Reply, Defendant cites three other cases it suggests supports its position that Plaintiff's claim began to run as soon as her report was filed. *Reply*, at 1-2, ECF No. 9 (citing *A.T. v. Everett Sch. Dist.*, 300 F. Supp. 3d 1243, 1259 (W.D. Wash. 2018), aff'd, 794 F. App'x 601 (9th Cir. 2019) (stating the plaintiff's federal claims accrued "when she knew or had reason to know of the injury which forms the basis of her federal claims, not when [she] learned an additional fact about the [school's] alleged knowledge that would bolster her claims"); *Clifford v. Regents of Univ. of California*, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *6-7 (E.D. Cal. Apr. 30, 2012), aff'd, 584 F. App'x 431 (9th Cir. 2014) (finding the plaintiff's Title IX claim accrued more than two years before the plaintiff filed suit and also noting "there are no facts alleged showing the

Defendant next argues Plaintiff has failed to state claim under Title IX. It is well established under the *Iqbal/Twombly* standard that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). Applying this standard, a plaintiff claiming sexual harassment under Title IX must plausibly allege that "(1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). With respect to this Defendant, the Supreme Court held in *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999), that an educational institution receiving federal funds "may be liable for subjecting their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student

---

University had knowledge of sex based harassment of Plaintiff before these incidents, or that it had substantial control over the alleged harassers and the context in which the events occurred" (citation omitted)); and *Padula v. Morris*, No. 205-CV-00411-MCE-EFB, 2008 WL 1970331, at *4 (E.D. Cal. May 2, 2008) (stating, with virtually no discussion or context of the plaintiffs' Title IX claims, the claims "accrued on the last date Plaintiffs' suffered an incident of sexual harassment relevant to their causes of action"). In reviewing these cases, the Court find them mostly distinguishable and otherwise inapplicable to the present situation. As stated above, Plaintiff is not claiming Defendant was deliberately indifferent in allowing her to be sexually assaulted or was deliberately indifferent at the time she filed her report. Instead, it was the Defendant's actions and inactions following her reporting of the event that she claims constitutes Defendant's deliberate indifference.

sexual harassment and the harasser is under the school's disciplinary authority." 526 U.S. at 646-47 (internal quotation and brackets marks omitted).[5]

Defendant summarized Plaintiff's allegations as taking too long to issue the NCO, untimely providing updates on the investigation, inappropriately placing Mr. Smith in a hotel room across from her room, and improperly finding Mr. Smith not responsible in the final report after finding he was responsible in the first draft. Defendant argues that these allegations are insufficient to show deliberate indifference. The Court, however, disagrees with both Defendant's summation of the Complaint and the argued result.

In the Complaint, Plaintiff does not merely say she and Mr. Smith were placed in hotel rooms across from one another, but it happened *after* the NCO was issued. Likewise, she alleges he attended the same Chemistry class as her *after* the NCO was issued and he also was allowed to continue cross-country practice with her. Although Plaintiff emailed Ms. Hart about the Chemistry class, she received no response. Likewise, the Program Coordinator at the University's Women's Center emailed and asked for an accommodation with regard to practices, but she also received no response. Instead, the day after the Program Coordinator sent her email, Plaintiff states she was dismissed from the team. It was not until approximately two-and-one-half weeks later that the final report found Ms. Smith not responsible. Upon review, the Court finds these allegations

---

[5]To be clear, liability for deliberate indifference only attaches where the institution has authority to take remedial action. *Id*. at 644.

are more than sufficient to state a plausible claim for deliberate indifference and, therefore, **DENIES** Defendant's argument to the contrary.[6]

Accordingly, for the foregoing reasons, the Court **FINDS** Plaintiff's Complaint was timely filed and she has stated a plausible claim of deliberate indifference under Title IX. Therefore, the Court **DENIES** Defendant's Motion to Dismiss. ECF No. 6

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 27, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[6]Defendant argues that Plaintiff's reliance on the "best practices" to use with respect to sexual harassment of students, as set forth in the 2011 "Dear Colleague Letter" issued by the Department of Educations' Office for Civil Rights (OCR), is misplaced because that letter was withdrawn by the OCR on September 22, 2017. *See* OCR, Dear Colleague Letter (Sept. 22, 2017), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf (last visited on May 26, 2021). However, the Court notes that the 2017 document also was rescinded on August 26, 2020. *See* OCR Rescinded Policy Guidance, https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/rr/policyguidance/respolicy.html (last visited on May 26, 2021) (marking the Sept. 22, 2017 document as rescinded). As the Court finds Plaintiff has stated a plausible claim irrespective of the Dear Colleague Letter, the Court finds it unnecessary to address Defendant's argument.